UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

DANNY R. JINKS )
 )
V. ) NO. 2:08-CV-60
 )
ERIC SHENSEKI, Secretary of )
Veterans Affairs, *ET AL.* )

## MEMORANDUM AND ORDER

The matter is before the United States Magistrate Judge, by consent of the parties under 28 U.S.C. § 636, with respect to the defendant's Motion for Summary Judgment [Doc. 33].

Plaintiff's remaining claims are for alleged discrimination (disparate treatment) on the basis of plaintiff's race under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, *et seq*.; and for alleged retaliation against him by his employer for engaging in protected activity by filing complaints with the Equal Employment Opportunity Commission ("EEO activity").[1]

Before his termination on August 6, 2005, plaintiff was employed by the Department of Veterans Affairs ("VA") as a supervisory employee in the food services department at the James H. Quillen Medical Center in Mountain Home, Tennessee.

The plaintiff, proceeding *pro se*, did not file a "traditional" response to the defendant's memorandum, but instead filed a "Statement of Undisputed Material Facts" [Doc. 40] with

---

[1] All other claims in the complaint were dismissed by this Court in a memorandum and order [Doc. 30] granting a previously filed motion to dismiss those claims.

various papers and transcripts attached thereto; and a "Response to Defendant's Statement of Undisputed Material Facts" [Doc. 41] with other papers and transcripts attached to it. The Court has carefully read all of the documents plaintiff has submitted. However, lacking a responsive brief to readily guide the Court to disputed material facts refuting the contentions made in the defendant's brief, for which the Court certainly does not fault the lay plaintiff, this opinion will first address the standard for summary judgment and the legal requirements for establishing a viable claim for Title VII discrimination and retaliation for engaging in protected EEO activity, and then discuss the factual contentions of the parties.[2]

*STANDARD FOR SUMMARY JUDGMENT:*

This Court may only grant summary judgment "if the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). Also, "[t]he evidence presented on a motion for summary judgment is construed in favor of the party opposing the motion who is given the benefit of all favorable inferences that can be drawn therefrom." *Taber v. Christ Hospital*, 723 F.Supp. 1236, 1240 (S.D. Ohio, W.D. 1989), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Weight of the evidence presented as to a material fact is likewise not a matter for the trial court to consider in deciding motions for summary judgment.

> The issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party exerting its existence; rather,

---

[2] Indeed, this is an attempt to assist the lay plaintiff in better understanding the reasoning of the Court in this opinion.

> all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial.

*First National Bank v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

On the other hand, summary judgment is required where there truly is no genuine issue of material fact.

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing of an essential element of her case with respect to which she has the burden of proof.

*Gagne v. Northwestern National Insurance Co.*, 881 F.2d 309 (6th Cir. 1989), citing *Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Also, "[T]he 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992 (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

The short version of the above is that a disputed fact must be "material," which means it is essential to an element of a cause of action of the plaintiff or a defense of the defendant. As a simple example, suppose a plaintiff sues a defendant for wearing a shirt which allegedly displayed a libelous statement about the plaintiff. If the defendant moves for summary judgment saying that there was no libelous statement on the shirt, and plaintiff points to some proof in the record that there was, this is a dispute of a *material* fact which would preclude

entry of summary judgment. On the other hand, a dispute between the parties as to whether the color of the shirt was red as opposed to blue is *not* material, and would not preclude summary judgment if the plaintiff could not come forward with proof in the record that the libelous statement was displayed on the shirt.

Likewise, where, as here, there are various "elements" of a cause of action which a plaintiff must carry the burden of proof upon to succeed at trial, if a defendant shows a failure of plaintiff's proof as to any essential element, all other facts in dispute become immaterial. In other words, they no longer matter because a necessary component of the plaintiff's case cannot be proven. Thus the cost and expense of a trial are not required in such situation and summary judgment would be appropriate.

***LEGAL STANDARD FOR DISPARATE TREATMENT CLAIM:***

In order to prove intentional discrimination on the basis of race under Title VII, plaintiff must present either direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment. *Johnson v. University of Cincinnati,* 215 F.3d 561, 572 (6th Cir. 2000). If there is no evidence of direct discrimination, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) is applied. *Id.*, at 572. Under the *McDonnell Douglas* test, the plaintiff has the burden of establishing by a preponderance of the evidence a *prima facie* case of racial discrimination and creating a presumption of discrimination by showing (1) that he was a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position lost; and (4) that a similarly situated person outside of the

4

protected class received more favorable treatment. *Gray v. Toshiba America Consumer Products, Inc.,* 263 F.3d 595, 598-99 (6th Cir. 2001).

If the plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* The burden then shifts back to the plaintiff to prove that the employer's articulated non-discriminatory reason is a mere pretext to cover discriminatory activity. *See Mitchell v. Toledo Hospital, supra,* at 584. To show pretext, a plaintiff must prove that the asserted reasons have no factual basis, that they did not motivate the adverse action, and that if they were factors, that they were insufficient to motivate the adverse action. *Gray,* 263 F.3d at 600.

## *LEGAL STANDARD FOR RETALIATION CLAIM:*

The *McDonnell Douglas* test also applies to retaliation claims. *Clay v. United Parcel Service, Inc.,* 501 F.3d 695, 713 (6th Cir. 2007). To prove his retaliation claims, plaintiff must show (1) that he engaged in activity protected by Title VII; (2) that this exercise of protected rights was known to the defendant; (3) that the defendant thereafter took an adverse employment action against the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Ford v. Gen. Motors Corp.,* 305 F.3d 545, 552-53 (6th Cir. 2002). If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the employer to show a non-discriminatory reason for the action. If the employer meets this burden, then, as before, the plaintiff has the burden of proving the pretexual nature of the asserted reason. *Niswander v. Cincinnati Life Ins. Co.,* 529 F.3d 714,

5

720 (6th Cir. 2008).

*DEFENDANT'S ASSERTIONS OF FACT:*

Defendant has filed a statement [Doc. 34] of what it avers are 16 undisputed material facts. They do not start at the "beginning," but instead begin with the termination at issue and then discuss the events leading up to the termination and the EEO proceedings both before and after the termination. The Court will attempt to summarize them.

Plaintiff's supervisor, Sandra Gilbert, the Chief of Nutrition and Food Service at defendant's facility, set forth two "Charges" in a letter to plaintiff dated June 20, 2005. "Charge I" was failure to follow instructions. "Charge II" was insubordination. The letter then sets forth two "specifications" of factual occurrences as the basis for the charges and her ultimate recommendation that plaintiff be removed from employment.

"Specification I" asserts that on November 17, 2004, Ms. Gilbert sent an e-mail message to all supervisors under her direction, including the plaintiff, that the diet office was to be covered at all times. There were disagreements and other "issues" between the plaintiff, Ms. Gilbert, and other personnel regarding this directive. Ultimately, defendant asserts that the plaintiff called a meeting of the diet office staff and told them that because of a "personal dispute" between Ms. Gilbert and himself, the person assigned to perform those duties would not be doing so. In effect, he countermanded the directive of Ms. Gilbert that the office be covered at all times.

"Specification II" asserts that on several occasions between March 7, 2005, and April 12, 2005, plaintiff failed to follow established food services procedures. For example, on

6

March 7, 2005, plaintiff is alleged to have failed and recorded tray accuracy temperatures or to assign those duties to someone working under him. Also, defendant states that on March 11, 2005, Ms. Gilbert informed all of the supervisors under her command that an extra cooler in the kitchen could be used on the tray line, provided that the cooler door was kept closed except when removing food items so that the food stored therein would not become unsafe to consume. In spite of this warning, on March 29, 2005, during plaintiff's shift, Ms. Gilbert discovered that the cooler door had been left open. In preparation for an inspection scheduled for the week of April 10, 2005, Ms. Gilbert told the plaintiff and other supervisors that all temperatures needed to be recorded for the inspectors. On April 11th and 12th, Ms. Gilbert found out that the plaintiff had failed to record the refrigerator/freezer temperatures on those dates.

The last alleged performance failure of the plaintiff in Specification II dealt with the procedures for getting necessary food items from "Building 77," where much of the food is stored, to the kitchen to be available for the next day's meal service. Ms. Gilbert states that the plaintiff was responsible for inventorying "par level items" on a daily basis, and to send a request to Building 77 for missing or needed items. Trucks which were used to transfer the food items were inventoried and noted on production sheets which were sent to the main kitchen. Plaintiff complained about missing food items. Ms. Gilbert asked that the plaintiff advise her by daily e-mails listing the items unavailable when "the tray line began." The plaintiff's e-mails listed items which the production sheets indicated had, in fact, been delivered. This conflict between the plaintiff's e-mails and the production sheets allegedly

7

disrupted the process of food delivery for the daily meal service.

According to defendant, plaintiff was admonished in August, 2003, for failing to follow instructions, was reprimanded in March, 2004, for failing to follow instructions, and then suspended in June, 2004, for three days for failing to follow instructions.

The June 20th letter gave the plaintiff until July 7, 2005, to reply to these assertions. The reply would be given to the Acting Medical Center Director, John McFadden, and further proceedings regarding Ms. Gilbert's assertions would then be taken. Plaintiff did not respond, and on July 28, 2009, Mr. McFadden sent a letter to the plaintiff stating that "the penalty of removal is appropriate and reasonable."

On November 14, 2005, plaintiff filed an EEO administrative complaint, asserting in part that his termination was the result of racial discrimination and in reprisal for prior EEO activity. On July 26, 2006, the VA Office of Employment Discrimination Complaint Adjudication issued a final agency decision finding that plaintiff had failed to establish a *prima facie* case of discrimination and that reprisal was not a factor in his termination. Plaintiff appealed this ruling to the Merit System Protection Board. The Administrative Law Judge affirmed the decision of the agency. Plaintiff appealed the ALJ's decision to the full Board. On September 28, 2007, the Board found that plaintiff's removal from employment was warranted.

Plaintiff filed a petition for review of the Merit System Protection Board decision with the EEOC on October 28, 2007. The EEOC issued a decision on January 15, 2008, affirming the Board's decision, and plaintiff instituted this action on February 15, 2008.

The prior EEO activity which plaintiff claims resulted in his retaliatory discharge consisted of a complaint filed in 2004 that alleged race discrimination for a three-day suspension he received, and a complaint he filed in 2005 alleging race discrimination for his demotion from his supervisory position to a lesser position while an investigation of the misconduct alleged in Ms. Gilbert's June 20, 2005, letter was conducted.

Defendant asserts that the decision to discharge plaintiff was made after consultation between Mr. McFadden, Ms. Gilbert, and Patsy Fish, the Human Resources Officer at the VA Medical Center. These decision-makers are all Caucasian, as is the plaintiff.

Defendant points out that an African-American supervisor and a Hispanic supervisor were treated no differently from the plaintiff for similar misconduct. Defendant also notes that defendant admitted in his EEOC hearing that he could not prove that he was discriminated against because of his race.

*PLAINTIFF'S ASSERTIONS OF FACT:*

Plaintiff has filed a response to the defendant's statement of undisputed material facts. Plaintiff disputes paragraphs 5, 6, 7, 8 and 15 of defendant's asserted undisputed facts.

Defendant's fifth asserted undisputed fact reads as follows:

> 5. The charge of failure to follow instructions relates to the plaintiff, after being notified via email on November 17, 2004 that the diet office was to be covered at all times countermanding these instructions. [Gilbert Ex. 4; Tr. at 102 - 109]. Plaintiff, in response to the instructions of the November 17, 2004 email, called a meeting of diet office staff (all plaintiff's subordinates), and informed them that due to a personal issue between he and Sandra Gilbert, the employee who had been assigned to cover the diet area would not be fulfilling these duties.

9

Plaintiff asserts that although an e-mail was sent on November 17th, exactly as defendant states, the diet office was fully staffed on the date in question, that an employee was in the office all but 1.5 hours on that day, and that plaintiff did not countermand the instructions. Plaintiff also states that the employee meeting was not in response to the November 17th e-mail, but rather in response to other communications with Ms. Gilbert.

Defendant's sixth asserted undisputed fact reads as follows:

> 6. The second charge in the proposed removal letter relates to the charge that plaintiff failed, on March 7, 2005, to either take and record tray accuracy temperatures or assign those duties to a subordinate. [Gilbert Ex. 3]. Also, on March 11, 2005, Chief Gilbert informed all Food Service supervisors that an "extra cooler" in the kitchen could be used on the tray line if the cooler's door was kept closed after removing food items (so that food items would not become unsafe). During a March 29, 2005 visit to the hospital during plaintiff's shift, Chief Gilbert discovered the door to the cooler being left open.

Plaintiff asserts that "Ms. Gilbert testified that she was unaware that the diet office employee had called in and that the plaintiff was already doing 2 other jobs when the tray check was missed." Plaintiff also asserts that there is proof that tray accuracy checks were missed on a regular basis. Plaintiff asserts that "the cooler could be used as long as the door was not left open." Also, plaintiff states that "Ms. Gilbert and other supervisors acknowledged under oath that it was the employee's responsibility to monitor cooler temps on their station and to inform supervisor if temps are not within limits."

Defendant's seventh asserted undisputed fact reads as follows:

> 7. In preparation for a Joint Commission inspection scheduled for the week of April 10, 2005, Chief Gilbert reminded all Food Service Worker Supervisors that all temperatures needed to be recorded, as this would likely be an area of focus by the Joint Commission. Despite the reminder, plaintiff, or those under his supervision, failed to record refrigerator/freezer temperatures on April 11 and April 12.

10

Plaintiff asserts that it was another supervisor who failed to record temperatures on April 11 and 12, 2005, and that this other supervisor and others told Ms. Gilbert that this was the case.

Defendant's eighth asserted undisputed fact reads as follows:

> 8. Food Service procedures included a process whereby the cook from building 77 (where much of the food was stored) and the Food Service Worker Supervisor worked collaboratively to ensure that everything needed for the next day's meal service would be available. The Food Service Worker Supervisor was responsible for inventorying par level items daily, and sending a request to Building 77 for missing or needed items. Food trucks brought from Building 77 to the kitchen were inventoried in the kitchen for missing items, which were then noted on production sheets and brought down later that same day. After plaintiff complained about missing food items, Chief Gilbert requested that Plaintiff email her daily with a list of food items unavailable when the tray line began. The lists plaintiff emailed to Chief Gilbert included items that had already been noted on the production sheets and brought over from Building 77 in time for the tray line to begin. Plaintiff's conflicting production sheets and emails therefore caused confusion for the process that was in place to ensure that needed food items were available for all meals.

Plaintiff agrees that the process is accurately described, but that Ms. Gilbert and others testified before the EEOC that there have been problems for years getting food items delivered from Building 77. Plaintiff also states that Ms. Gilbert testified that "plaintiff could not have been written up for not identifying missing food items," and that all supervisors frequently sent e-mails identifying food shortages.

Defendant's fifteenth asserted undisputed fact reads as follows:

> 15. One of the plaintiff's fellow supervisors in the Nutrition and Food Service at the VA was Jayneal Joseph, an African-American, who testified that he was treated similarly to the plaintiff.

Plaintiff asserts that Ms. Fish, the Human Resources Director, testified that Mr. Joseph's demotion during his investigation "only lasted a day or two."

11

*ANALYSIS:*

At the outset, it must be stated that Title VII only affords protection to employees from unfair termination or retaliation in very specific instances. Title VII does not provide a cosmic remedy against unfairness in the workplace. There is no cause of action available under Title VII for an employer or supervisor not getting along with an employee based upon personality traits, no matter how unjustified the employer's attitude may be. Title VII is not a substitute for a union contract. In plaintiff's case, he must now show under the legal standards set forth above that he was terminated because of his race, or that he was retaliated against for exercising federally protected rights to engage in EEO proceedings. If his proof cannot meet those standards, his causes of action must fail and his case dismissed, no matter how "right" he may be regarding his opinion of his performance on the job and in his relationship with his superiors, or how "wrong" they were in treating him as they did.[3]

Under the *McDonnell Douglas* test, even if the plaintiff suffered an adverse employment action and was qualified for the position he lost, factors not contested for purposes of this Motion, he must show that he was a member of a protected class *and* that a similarly situated person outside of the protected class received more favorable treatment. Without showing at least a legitimate dispute of fact on these two factors, plaintiff cannot establish the required *prima facie* case necessary to force the defendant to show a valid, non-pretextual reason for its actions toward him.

---

[3] As noted above, other causes of action which may have addressed such grievances were earlier dismissed on statute of limitation and jurisdictional grounds.

Plaintiff asserts that he is the victim of racial discrimination. Plaintiff is Caucasian, as are the three people who took part in the decision to terminate him, Ms. Fish, Ms. Gilbert, and Mr. McFadden. In the view of the Sixth Circuit "[t]he 'reverse discrimination' complainant bears the burden of demonstrating that he was intentionally discriminated against 'despite his majority status.'" *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985). In *Murray*, the Court agreed "with the district court that a *prima facie* case of 'reverse discrimination' is established upon a showing that 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Id.* Here, the plaintiff points to no background circumstances of racial discrimination against Caucasian employees. The case of *Zambetti v. Cuyahoga Community College*, 314 F.3d 249 (6th Cir. 2002), recognized the continuing authority of *Murray* in reverse discrimination situations, but found that the plaintiff there satisfied the first prong by showing that the hiring official was African-American, which in and of itself was sufficient to meet the "background circumstances" requirement of *Murray*. Here, there is no such showing of background circumstances at the VA that supports plaintiff's position. There is no disputed fact regarding whether there are "background circumstances" which plaintiff can use to meet his burden. Therefore, the plaintiff cannot meet the initial prong regarding his wrongful termination action of showing that he is a member of a protected class in the first place.

As to the fourth prong of the *McDonnell Douglas* test in a racial discrimination case, which requires a showing that a similarly situated employee outside of his protected group

was treated more favorably under similar circumstances, plaintiff fares no better. In the case of *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992), the Sixth Circuit stated that to make a comparison with a "similarly situated employee," "[t]he plaintiff must show that the 'comparables' are similarly-situated in all respects . . . [T]hus, to be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." [Internal citations omitted].

Here, there is no evidence that a food service supervisor, someone who dealt with the same supervisor, Ms. Gilbert, was treated differently. Granted, our precedent sets a very difficult burden for a claimant to overcome regarding who is "similarly situated." However, as previously stated, Title VII has narrow aims and a finely focused reach. As plaintiff admitted to the EEOC, he cannot prove that he was discriminated against because of his race, or even show a factual issue in that regard.

The plaintiff also asserts that the defendant has retaliated against him for engaging in protected EEO activity in the past. As stated above, the *McDonnell Douglas* test is also applied in this context, albeit with slightly different requirements. Even though the plaintiff can show some evidence satisfying the first three prongs set forth in *Ford v. Gen. Motors Corp.*, *supra*, there remains the fourth element to overcome, *viz.*, establishment of a causal connection between the protected activity and the adverse employment action, to enable him

14

to establish his *prima facie* case of retaliation.

The "causal connection" between a plaintiff engaging in protected activity and the offending action of the employer may be shown by "proximity" between the two occurrences. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 272-73, (2001). However, to prove causality by proximity alone to satisfy the test, and without other evidence of retaliation, the proximity of the protected conduct to the adverse action must be very close. In *Clark County*, the Supreme Court tacitly approved a holding in *Huges v. Derwinski*, 967 F.2d. 1168 (7th Cir. 1992), that a 4-month period was too long to show the causal connection. *Clark County*, at 274. The Sixth Circuit has stated that disciplinary actions coming two to five months after the protected conduct is not sufficiently "proximate" to establish required causality. *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999).

Here, the plaintiff filed his first EEO charge on June 6, 2004. Obviously, there is no inferred causality established by the proximity of the date he filed that charge to his termination on July 28, 2005, over a year later, without some other evidence suggesting that one led to the other. There is no such evidence pointed out by the plaintiff.

Plaintiff's second EEO charge was filed on June 8, 2005. This was seven weeks prior to his termination. However, the June 8, 2005, charge was made after Ms. Gilbert detailed the plaintiff from his supervisor position to the nourishment room, in order that she could investigate the perceived deficiencies in plaintiff's conduct which made up the "Specifications" in the charging letter she would write on June 20th. Thus, argues the defendant, the "die was cast" regarding the reasons for which Ms. Gilbert would ultimately

15

seek plaintiff's termination at the time he filed the second EEO charge.  In order for this second charge to establish causality, the plaintiff must at least "'produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken in the absence of the protected conduct.'" *Johnson v. University of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000).

Plaintiff's assertions of undisputed facts [Doc. 40] stress the significance of the first EEO charge as the perceived reason for the VA's actions (Paragraphs 4 and 5), but do not discuss any impact of the second EEO charge whatsoever.  The first charge is simply too remote to circumstantially raise an inference of retaliation, while the second was not filed until the alleged retaliation was in full swing.  The plaintiff has not set forth a *prima facie* case of retaliation.

Although the Court finds that plaintiff has not made out a *prima facie* case either as to racial discrimination or retaliation, the defendant nevertheless set forth a valid, non-discriminatory reason for his termination.  These reasons were set forth in Ms. Gilbert's initial letter to plaintiff, and plaintiff did not respond to any of these allegations to Mr. McFadden.  This is strange, because Mr. McFadden would have been in a better position than any later adjudicator to assess the merits of plaintiff's assertions before the EEOC and this Court that the incidents complained of were trivial or false or not in conformity with standard procedures for the operation of the VA food service department.

At the final stage of the *McDonnell Douglas* test, the burden shifts back to the plaintiff to show evidence of pretext for unlawful discrimination.  To do this, the plaintiff must show

16

that the proffered reasons (a) had no basis in fact, (b) did not actually motivate the adverse employment action, or (c) were insufficient to motivate the adverse employment action. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 10789, 1084 (6th Cir. 1994).  Plaintiff's disputations of defendant's alleged facts set forth above all relate to the claim of pretext. However, this Court cannot trivialize the stated concerns of plaintiff's supervisor regarding the impact of plaintiff's alleged misconduct and insubordination.  Also, it must be borne in mind that there is no legitimate suggestion that there was racial discrimination or retaliation. As stated at the outset, Title VII does not protect against all unfair treatment of employees. Assuming purely for the sake of argument that Ms. Gilbert was determined to get the plaintiff fired because she did not like his attitude, or was jealous of his performance or his habit of speaking his mind, these are not wrongs which Title VII is designed to remedy.

For the foregoing reasons, the Defendant's Motion for Summary Judgment [Doc. 33] is **GRANTED**, and the Clerk is directed to enter judgment accordingly.

SO  ORDERED:

                                                s/ Dennis H. Inman
                                                United States Magistrate Judge